UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **RAMADA WORLDWIDE INC.**, a Delaware Corporation<br><br>Plaintiff,<br><br>v.<br><br>**ZULFIKAR JAFRI**, an individual, **ASKARI JAFRI**, an individual, **WAJIH JAFRI**, an individual, and **STEVEN WEIL**, an individual,<br><br>Defendants. | Civ. No. 12-cv-5301 (KM)<br><br>**OPINION** |

### KEVIN MCNULTY, U.S.D.J.:

Ramada Worldwide Inc. ("RWI") brings this action to enforce a personal guaranty against the remaining defendant, Zulfikar Jafri ("Jafri").[1] Jafri and three other individuals were the owners and principal shareholders of Whitehall Avenue, LLC ("Whitehall"). In September 2009, RWI and Whitehall entered into a franchise agreement that permitted Whitehall to operate a Ramada hotel in Connecticut. Jafri had three partners: his brothers, Askari Jafri and Wajih Jafri, and Steven Weil. Jafri and his three partners purportedly executed a personal guaranty in connection with the franchise agreement, in which they promised to satisfy Whitehall's obligations in the event of default. Whitehall defaulted and filed for bankruptcy in January 2011. RWI then filed this action to enforce the guaranty. Jafri and his partners filed a counterclaim alleging breach of contract and fraud. RWI and Jafri's partners reached a settlement, leaving Jafri as the sole defendant. (*See* Dkt. No. 19.)

---

[1] To avoid confusion, "Jafri" as used herein will refer to Zulfikar Jafri. References to Askari Jafri or Wajih Jafri will include both first and last names.

1

Now before the Court are cross-motions for summary judgment filed by RWI and Jafri. Jafri, while admitting that he signed the guaranty, contends that his co-guarantors' signatures were forged, relieving him of liability. That defense does raise genuine, material issues, both as to the fact of forgery and RWI's knowledge of or involvement in the alleged forgery. For the reasons set forth below, both sides' summary judgment motions will be denied.

## I.  BACKGROUND

RWI, a Delaware corporation with its principal place of business in New Jersey, operates the nationally known Ramada hotel franchise. Jafri is a citizen of Connecticut. Along with his two brothers, Askari Jafri and Wajih Jafri, and a third partner, Steven Weil, Jafri owned Whitehall. Whitehall, in turn, owned a 150-room lodging facility in Mystic, Connecticut. On September 30, 2009, RWI and Whitehall executed a franchise agreement (the "Franchise Agreement") under which Whitehall would operate the lodging facility as a Ramada hotel for 15 years. (Defendant's Statement of Material Facts Not In Dispute, Dkt. No. 22-1, ¶1).

Under Section 7, Section 18, and Schedule C of the Franchise Agreement, Whitehall was required to make periodic payments to RWI for, *inter alia*, royalties, services assessments, conferences, and access to its central reservation system (collectively, "Recurring Fees"). (Plaintiff's Statement of Material Facts Not In Dispute, Dkt. No. 21-4, ¶¶7-11) Section 7.3 of the Franchise Agreement stated that the interest on such Recurring Fees would accrue at the rate of 1.5% per month for all payments that came past due. (*Id.* at ¶11) If Whitehall failed to pay the Recurring Fees, Section 11.2 of the Franchise Agreement permitted RWI to terminate the contract upon notice to Whitehall. (*Id.* at ¶14). In the event of termination under Section 11.2, Sections 12.1 and 18.1 prescribed that Whitehall would pay liquidated damages in the amount of $100,000. (*Id.* at ¶¶15-16) Additionally, Whitehall undertook to pay "all costs and expenses, including reasonable attorneys' fees" incurred by RWI

to enforce or collect any amount owed under the Franchise Agreement. (*Id.* at ¶17, *see* Franchise Agreement §17.4). The parties also executed a Connectivity Addendum for broadband services, which contained a separate liquidated damages provision in the amount of $2,500 if either the Connectivity Addendum or Franchise Agreement were terminated. (*Id.* at ¶¶19-20)

RWI claims that on September 30, 2009, Jafri and his three partners executed a personal guaranty of Whitehall's obligations under the Franchise Agreement. Pursuant to the terms of the guaranty, the guarantors pledged to "immediately make each payment and perform or cause [Whitehall] to perform, each unpaid or unperformed obligation of [Whitehall] under the [Franchise] Agreement." (*Id.* at ¶23). The guarantors also agreed to pay the costs, including reasonable attorneys' fees, incurred by RWI in enforcing its rights under the Franchise Agreement or the guaranty. (*Id.* at ¶24). Each co-guarantor was to be jointly and severally liable for Whitehall's obligations to RWI. Jafri does not contest the validity of his signature, but maintains that signatures of his three partners were forged by RWI or its agents.

At some point—it is not clear exactly when—Whitehall fell behind in its payment of the Recurring Fees. On January 24, 2011, Whitehall filed for Chapter 11 bankruptcy. (*Id.* at ¶26) On June 17, 2011, the bankruptcy court lifted the automatic stay and allowed RWI to terminate the Franchise Agreement. (*Id.* at ¶28) In a letter dated July 14, 2011, RWI informed Whitehall that it was formally terminating the Franchise Agreement and demanded that Jafri and the other guarantors satisfy Whitehall's debts within 10 days. (*See* Termination Notice, Dkt. 21-5, at 72) Jafri testified during his deposition that he received the letter. (Deposition of Zulfikar Jafri, Dkt. 33, at 39-40) It is undisputed that Whitehall has defaulted under the Franchise Agreement. It is also undisputed that none of the guarantors have satisfied, in whole or in part, Whitehall's outstanding debts to RWI.

On August 23, 2012, RWI commenced the present action to enforce the guaranty. RWI seeks to recover $259,155.76 in outstanding Recurring Fees, liquidated damages, interest, and attorneys' fees and costs. Jafri does not deny Whitehall's default and does not deny signing the guaranty. He contends, however, that the signatures of co-guarantors Askari Jafri, Wajih Jafri, and Weil, are forged, and that any such forgery occurred after he signed and delivered the guaranty to RWI. Because three of the four signatures on the guaranty were forged, says Jafri, the guaranty is invalid and he cannot be held liable under it.

## II.    JURISDICTION and SUMMARY JUDGMENT STANDARD

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a), as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

If the moving party meets its threshold burden, the opposing party must present actual evidence that creates a genuine issue as to a material fact for

4

trial. *Anderson*, 477 U.S. at 248; *see also* FED. R. CIV. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial.").

Where, as here, the parties file cross-motions for summary judgment, the governing standard "does not change." *Clevenger v. First Option Health Plan of N.J.*, 208 F. Supp. 2d 463, 468–69 (D.N.J. 2002) (citing *Weissman v. U.S.P.S.*, 19 F. Supp. 2d 254 (D.N.J. 1998)). The court must consider the motions independently, in accordance with the principles outlined above. *Goldwell of N.J., Inc. v. KPSS, Inc.*, 622 F. Supp. 2d 168, 184 (2009); *Williams v. Philadelphia Hous. Auth.*, 834 F. Supp. 794, 797 (E.D. Pa. 1993), *aff'd*, 27 F.3d 560 (3d Cir. 1994). That one of the cross-motions is denied does not imply that the other must be granted. For each motion, "the court construes facts and draws inferences in favor of the party against whom the motion under consideration is made" but does not "weigh the evidence or make credibility determinations" because "these tasks are left for the fact-finder." *Pichler v. UNITE*, 542 F.3d 380, 386 (3d Cir. 2008) (internal quotation and citations omitted).

### III.   ANALYSIS

To prove a claim for breach of a personal guaranty, the plaintiff must show: (i) the execution of the guaranty by the guarantor; (ii) the principal obligation and terms of the guaranty; (iii) the lender's reliance on the guaranty in extending monies to the borrower; (iv) default by the principal obligor, (v) written demand for payment on the guaranty; and (vi) failure of the guarantor to pay upon written demand. *U.S. on Behalf of Small Bus. Admin. v. DelGuercio*, 818 F. Supp. 725, 728 (D.N.J. 1993). RWI argues that each of these elements

has been conclusively established here, and I agree. Jafri does not deny executing the guaranty. (*See* Dkt. No. 33, at 34). The terms of the guaranty are unambiguous and clearly set forth Jafri's obligation to "immediately make each payment" owed by Whitehall. (Dkt. No. 21-4, ¶23) RWI's reliance upon the guaranty is evidenced by its express language, which states that the purpose of the guaranty is "[t]o induce Ramada Worldwide Inc....to sign the Franchise Agreement." (Dkt. No. 22-4, at 48) It is undisputed that Whitehall failed to pay the Recurring Fees and eventually declared bankruptcy in January 2011. Finally, RWI's July 14, 2011 letter demanded payment under the guaranty, and Jafri has not paid.

Jafri offers no evidence to controvert any of these facts, but nonetheless contends that summary judgment should be granted in his favor because the guaranty is unenforceable. Jafri argues that someone at RWI forged his partners' signatures on the guaranty. The effect of this forgery, he says, was to fraudulently induce him to sign the guaranty, or, alternatively, to create a defect in the formation of the guaranty. Either way, Jafri contends, RWI's motion for summary judgment must be denied because the guaranty cannot be enforced against him.

There is patently an issue of fact as to whether the signatures are forged. Jafri has submitted a handwriting analyst's report. The report is skimpy and unsworn, casting doubt on the admissibility of the expert's testimony.[2] At oral

---

[2] Expert testimony admitted under Federal Rule of Evidence 702 must meet three requirements: "(1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir.2008).

The report of Jafri's forensic expert, James L. Streeter, is not supported by an affidavit or declaration. *See* Fed. R. Civ. P. 56(c)(1)(A); *Fowle v. C & C Cola*, 868 F.2d 59, 67 (3d Cir. 1989)(An unsworn expert report "is not competent to be considered on a motion for summary judgment."); *Burrell v. Minnesota Min. Mfg. Co.*, 2011 WL 5458324 (E.D.Pa. June 9, 2011) at *1 n.1 (refusing to consider plaintiff's expert report on defendants' motion for summary judgment because it "was not sworn to under penalty of perjury.") Further, before accepting it, the court would need to conclude

6

argument, however, it emerged that Askari Jafri and Wajih Jafri had testified in depositions that the signatures were not theirs. While the relevant excerpts were not included in the summary judgment motions, I nevertheless consider them. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.") (quotations omitted). Jafri himself testified in his deposition that he is familiar with his brothers' signatures, and that these are not genuine. (Dkt. No. 33 at 36:14-37:1) Counsel for RWI candidly acknowledged at oral argument that the genuineness of the signatures poses a factual issue.

---

that these are not unsupported conclusions, or (in New Jersey state court parlance) "net opinions." Although expert testimony "as to the similarities in handwriting is generally admissible", *see U.S. v. McGlory*, 968 F.2d 309, 346 (3d Cir. 1992), it is well settled that "expert testimony that contains bare conclusions, unsupported by factual evidence" may be excluded." *Holman Enterprises v. Fid. & Guar. Ins. Co.*, 563 F. Supp. 2d 467, 471-72 (D.N.J. 2008) (citing *Buckelew v. Grossbard*, 87 N.J. 512 (1981)); *see also Fedorczyk v. Caribbean Cruise Lines, Ltd.*, 82 F.3d 69, 75 (3d Cir.1996) ("An expert opinion is not admissible if the court concludes that an opinion based upon particular facts cannot be grounded upon those facts.").

The report compares the disputed signatures on the guaranty to a list of known signatures of each of Jafri's three partners. (*See* Dkt. No. 22-4, at 25-34, 36-38) It does not explain why these particular known signatures were chosen while others were not. *See Merrill Lunch Business Financial Inc. v. Kupperman*, 2007 WL 4287684, at *2 (D.N.J. Dec. 4, 2007) (rejecting motion to reconsider exclusion of defendant's expert report claiming defendant's signature was forged on these and other grounds). The documents containing "known" signatures were not included in the report or otherwise presented to the Court. The report does contain a single image of each partner's signature, but fails to identify the source, and does not even explicitly state that the signature appeared on any particular document reviewed by the expert. The report states that each of the signature comparisons "revealed numerous dissimilarities in individual handwriting characteristics and habits" (*see, e.g.*, Dkt. No. 22-4, at 27), but does not offer any meaningful or rigorous explanation of such dissimilarities. *See Kupperman*, 2007 WL 4287684, at *2 ("The report concludes that [the defendant's] Guaranty signature contains 'dissimilar' letters, without explaining how, why, or to which specific documents.")

7

RWI maintains, however, that the genuineness, or not, of the signatures is not a *material* issue in light of governing law. Jafri's claim to have been fraudulently induced to sign the guaranty, says RWI, cannot stand because he is jointly and severally liable and the forgeries, if any, occurred after Jafri had signed on his own behalf, precluding any possibility of reliance. The gist of Jafri's position is that, had he known he stood alone as guarantor, without the possibility of obtaining contribution from three co-guarantors, he would not have signed.

To prove equitable fraud in the inducement of a contract, Jafri must demonstrate (i) a material misrepresentation of a presently existing or past fact, (ii) reasonable reliance, and (iii) resulting damages. *Mortellite v. Novartis Crop Prot., Inc.*, 460 F.3d 483, 492 (3d Cir. 2006); *Jewish Ctr. of Sussex County v. Whale*, 86 N.J. 619, 432 A.2d 521, 524 (1981). Alternatively, he argues that the guaranty, as a contract, simply did not become effective until the condition of four valid signatures of guarantors was fulfilled.

No New Jersey case law specifically addresses the application of these principles to a guaranty where the signature of a co-guarantor has (*arguendo*) been forged. Other jurisdictions have held that, where a guarantor is otherwise liable, a co-guarantor's subsequent forged signature will not relieve a guarantor of liability. Each case, however, contains a reservation or proviso suggesting that the issues of fact raised here may be material.

For example, *China Trust Bank (U.S.A.) v. Pinter*, 2007 WL 922421 (E.D.N.Y. Mar. 26, 2007), cited an established principle of New York law that "[i]in an action by a payee against one who has signed a note as surety, it is no defense thereto that the name of one or more of the obligors on such instrument has been forged, though the surety signed the same in the belief that the signatures were genuine, where it appears that the instrument was *accepted by the payee without notice of the forgery.*" *Id.* at *4 (emphasis added; citations omitted). In this case, however, Jafri contends that RWI *did* have

8

"notice of the forgery," and indeed may have been responsible for it. In his deposition, Jafri stated that the guaranty bore only his own signature when he returned it to RWI's representative at the closing, and that the other signatures, which appeared later, are not genuine.

*First Nat. Bank of Cedaredge v. Aspinwall*, 44 Colo. App. 23 (1980), held that "[t]he presence of a forged signature on a guaranty instrument is not itself sufficient to eliminate the liability of other guarantors. When a forged signature is placed on a guaranty instrument after the guarantor has signed, the guarantor is not relieved of liability." *Id.* at 25. Jafri, like the guarantor, signed the guaranty before the purported signatures of co-guarantors were placed on it. *Aspinwall,* however, also noted that the bank did *not* have "constructive notice" of the forgery, and that the guarantor "d[id] not assert that he signed the instrument in reliance upon International Medical Products securing other guaranties in the future." *Id.* Here, Jafri urges a circumstantial inference that the forged signatures appeared on the guaranty while it was in RWI's custody, and he contends that he signed the guaranty in the reasonable belief that the others would sign it as well.

*Aspinwall* relied on the venerable case of *Danner v. Walker-Smith Co.,* 154 S.W. 295 (Tex. Ct. App. 1912). *Danner's* relevant holding is worth quoting in full:

> Had Walker-Smith & Co. [in the shoes of RWI here] been in any wise connected with such forgery, said instrument would have been void as to all parties; but as they were not so connected, and as the instrument was a joint and several obligation, and it is not claimed by either of the appellants [two of the guarantors] that he signed it upon the faith of the same having been signed or that it would be signed by any of the other appellants, we hold that such of the parties, if any, who signed said instrument, are liable thereon, notwithstanding the fact that the same was forged as to one or more of the other parties.

9

*Id.* at 300. Here, again, Jafri asserts that RWI *is* "connected with such forgery," and *does* claim that he signed the guaranty "on the faith ... that it would be signed" by his three partners as well.

Of course, RWI may have ample reason to believe it can ultimately prevail on these factual issues. That is different, however, from saying it should prevail on summary judgment.

RWI points out that the allegation of forgery by itself is implausible, and that it would introduce contrary evidence at trial. RWI had the power to withhold the deal,[3] did not want to commit itself without the four guaranties in place, and was otherwise punctilious about documenting the terms of the transaction. It seemingly had little incentive to forge three signatures, as opposed to simply insisting on a validly executed guaranty as a condition of going forward. Yet, Jafri's forgery claim, though questionable, is not impossible—at present there is *no* account in the record of how the three co-guarantors' signatures came to be on the guaranty. (In that respect, both counsel acknowledged at oral argument that they had been hampered by their inability to obtain the deposition of RWI's representative at the closing, Jim Baldassari.)

As to reliance, too, the parties' submissions indicate that the evidence was contradictory—but not so one-sided as to require summary judgment for either. Jafri testified in his deposition that he had signed the guaranty, but that he had only "really noticed and read it ... when [he] was served" with the complaint. (Dkt No. 33 at 34:24) He then said, however, that he recalled specifically that there were no other signatures on the document when he signed it. (*Id.* at 35:22-36:4, 37:5-8) Jafri also testified that he did not even notice at the time that there were signature lines for the other partners. (*Id.* at

---

3   Jafri testified that he signed because RWI's representative, Jim Baldassari, placed him under pressure, threatening to withdraw favorable terms unless the deal closed by 5 pm. (Dkt No. 33 at 35:3-21) RWI clearly had bargaining power in this situation.

10

36: 5-9) The document provided that it could be signed in counterparts, and there is no evidence that Jafri ever consulted with his co-guarantors about whether they had signed, or checked to see whether they had done so. These circumstances, taken together, undercut any claim that Jafri relied on the other partners' signatures.

Still, the guaranty on its face is a collective, group document. Liability under the guaranty is several, but also joint. Above the signature lines, it recites: "IN WITNESS WHEREOF, *each of us* has signed this Guaranty effective as of the date of the Agreement." (Dkt. No. 22-4, at 48 (emphasis added)) The guaranty repeatedly refers to the guarantors as "we," "our," or "us." (*Id.*) Furthermore, RWI's representative, Baldesari, allegedly told Jafri at the closing that the guaranty would not become operative "until all signatories signed."[4] While far from conclusive, that is not a wholly unreasonable interpretation of the guaranty. The guaranty could have been, but was not, drafted to provide explicitly that each individual's signature was binding as to that individual, and that formation of the contract as to any single guarantor was not contingent upon the others' signatures.

All of the foregoing, however, goes to the credibility and weight of the evidence. It does not preclude a finding that there is a genuine, material issue to be tried.

### IV. CONCLUSION

For the foregoing reasons, RWI's motion for summary judgment is **DENIED** and Jafri's motion for summary judgment is likewise **DENIED**.

---

[4] Elsewhere, Jafri contends that this was a fraudulent *misrepresentation* of fact by Baldesari. But the thrust of Jafri's argument seems to be that this was an accurate statement.

11

The parties shall, with the assistance of the Magistrate Judge, take the necessary steps to posture the case for settlement or a bench trial.

An appropriate Order will issue.

Dated: January 29, 2015

KEVIN MCNULTY
United States District Judge